911 F.2d 731
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gregory CARNILL, Petitioner-Appellant,
v.
UNITED STATES of America Respondent-Appellee.
 No. 89-1089.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1990.
 
 Before KENNEDY and BOGGS, Circuit Judges, and TIMBERS,* Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In December 1985, Gregory Carnill was convicted of 88 counts of mail fraud. As a practicing chiropractor at the Hamilton Clinic in Highland Park, Michigan, he had been engaged in a scheme to defraud Blue Cross/Blue Shield of Michigan by submitting false insurance claims. In December 1988, he filed a motion to vacate his conviction pursuant to 28 U.S.C. Sec. 2255 and a motion to disqualify United States District Judge Anna Diggs Taylor. Judge Taylor denied both motions.[1] Finding that Carnill's conviction is constitutionally valid and that no basis existed for Judge Taylor's disqualification, we affirm.
 
 
 2
 * A
 
 
 3
 The allegations in Carnill's motion to vacate are largely connected to those presented in his direct appeal to the Sixth Circuit. On September 22, 1987, a panel of this court affirmed Carnill's conviction (and those of his co-defendants), finding no reversible error. United States v. Dean, et al., Nos. 86-1150/1220/1221/1222/1224 (6th Cir. September 27, 1987) (unpublished per curiam). See also United States v. Azad, 809 F.2d 291 (6th Cir.1986) (reciting the details of the fraud scheme), cert. denied, 481 U.S. 1004 (1987). The five defendants each argued that: 1) the district court abused its discretion by excluding the testimony of a medical expert; 2) this exclusion violated their constitutional right to present a complete defense; 3) the court erred by denying their motion to dismiss the indictment, to strike surplusage from the indictment, and to receive a bill of particulars; 4) the court erred by not finding that there was prosecutorial misconduct at the grand jury proceedings; 5) the court erred by failing to disclose the record of the grand jury proceedings; 6) the prosecutor's closing argument contained prejudicial remarks that denied them a fair trial; and 7) the court erred by not holding an evidentiary hearing to determine the exact amount of money taken in the scheme. Carnill also raised the individual claim that he was prejudiced by a 59-day delay in the middle of the trial. The panel found that all of these arguments lacked merit.
 
 
 4
 In appealing the denial of his Sec. 2255 motion, Carnill claims that 1) he was denied due process based on Judge Taylor's conflict of interest; 2) the government failed to prove a key element of the crime; 3) the conviction is invalid because contrary to the antitrust laws; 4) the district court violated Fed.R.Crim.P. 32(c)(3)(D) by not making factual findings as to disputed information in the presentence investigation report; 5) the court allowed the jury to make determinations about what procedures (for which Blue Cross was billed) were medically necessary; 6) he was denied effective assistance of counsel; and 7) the sentence is excessive. He also repeats the following claims made in his direct appeal: that he was prejudiced by the delay during the trial, during which a juror underwent treatment in a hospital of which Judge Taylor was a trustee; that there was prosecutorial misconduct; and that he was denied his right to present witnesses. Judge Taylor dismissed the Sec. 2255 motion for failure to state a claim on which relief may be granted.
 
 B
 
 5
 Most of Carnill's allegations are vague and conclusory. In United States v. Frady, 456 U.S. 152, 167-68 (1982), the Supreme Court held that a successful Sec. 2255 motion must show 1) cause for failure to raise the claims at trial, and 2) actual prejudice resulting from errors at trial. The movant must demonstrate that the trial errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 170 (emphasis in original). Carnill is not able to make this showing.
 
 
 6
 The assertions raised in Carnill's direct appeal that are repeated here--prejudice resulting from the trial delay, prosecutorial misconduct, and a denial of his right to present witnesses--were already rejected by a panel of this court. Carnill gives no reasonable explanation of why he believes we erred by denying relief previously. In any case, review of a determination on the merits by this court is not available through a habeas petition.
 
 
 7
 The assertions that Carnill was denied due process because of Judge Taylor's alleged conflict of interest and that Carnill was denied effective assistance of counsel are based on Carnill's claim for disqualification. These two claims are meritless for the reasons stated in part II of this opinion. To the extent that Carnill's ineffectiveness of counsel claim is not dependent on the success of his disqualification claim, it is meritless because Carnill cannot affimatively prove the prejudice necessary to make out a sixth amendment violation. We do not find it reasonably probable that, but for the alleged errors made by trial counsel, the outcome would have been different; therefore, Carnill cannot show actual ineffectiveness. Strickland v. Washington, 466 U.S. 668, 693-94 (1984).
 
 
 8
 Carnill's claim that his sentence is illegal is unsupported. The district court imposed a sentence authorized by statute. Therefore, Sec. 2255 relief cannot be granted on this basis. See Baker v. United States 781 F.2d 85, 92 (6th Cir.), cert. denied, 107 S.Ct. 667 (1986) (denying claim that a sentence imposed after defendant pleaded guilty was excessive).
 
 
 9
 Most of the remaining assertions--that the government failed to prove its case, that an application of the antitrust laws renders the conviction invalid, and that the court allowed the jury to decide what was medically necessary--are patently meritless. None can meet the "cause and actual prejudice" standard laid down in Frady.
 
 
 10
 Carnill's last claim is his assertion that the court violated Fed.R.Crim.P. 32(c)(3)(D) by not making a finding that the dollar value of the fraud reflected in the presentence investigation report was accurate or, in the alternative, determining that such a finding would not be necessary for sentencing. Carnill cites United States v. Smedes, No. 86-1702 (6th Cir. September 11, 1987) (unpublished per curiam), for the proposition that the district judge must make either a docket margin notation or a notation in the margin of the presentence report in order to satisfy Rule 32(c)(3)(D).
 
 
 11
 Carnill's argument was dismissed earlier on direct appeal:
 
 
 12
 Finally, the defendants challenged the accuracy of figures contained in the pre-sentence report and requested that an evidentiary hearing be held to determine the amount of money involved in the scheme to defraud. However, the court did not rely upon the information contained in the pre-sentence report but instead relied on evidence produced at trial. Accordingly, there was no need for a separate evidentiary hearing.
 
 
 13
 United States v. Dean, slip op. at 4. A review of the transcript of Carnill's sentencing hearing reveals that Judge Taylor specifically indicated that she was not relying on the disputed facts in the presentence report. The court and defense counsel engaged in this colloquy:
 
 
 14
 THE COURT: The Court just told you its determination. The Court considers that the sum involved--to the extent that this is relevant to the sentence, the sum involved is the amount of each of the checks which is alleged to have been mailed as a result of mail fraud.
 
 
 15
 [DEFENSE COUNSEL]: No matter--
 
 
 16
 THE COURT: I don't know what that totals. But the Court is not considering amounts of money altogether as determinative of the sentence.
 
 
 17
 This finding is sufficient to meet the requirement of Rule 32(c)(3)(D)(i). More significantly, the court clarified that it found the disputed information only marginally relevant and therefore was not taking it into account in sentencing, thereby meeting the requirement of Rule 32(c)(3)(D)(ii).
 
 II
 
 18
 The gravamen of Carnill's recusal motion is that Judge Taylor was at all relevant times a trustee of several Detroit-area hospitals that would have reason to be hostile to him. He argues that her affiliations with these medical institutions required her to recuse herself under 28 U.S.C. Secs. 144 and 455.
 
 
 19
 Disqualification of district judges may be required either under 28 U.S.C. Sec. 144, which instructs a party to file "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party," or under 28 U.S.C. Sec. 455. Sec. 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Sec. 455(b) states:
 
 
 20
 He shall also disqualify himself in the following circumstances:
 
 
 21
 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 Carnill claims that these statutes required the district judge's recusal. He has submitted Judge Taylor's financial disclosure reports, which indicate that the judge has been or is a trustee of Detroit Receiving Hospital, Sinai Hospital, Metropolitan Hospital, and the Health Alliance Plan. Carnill claims that these medical institutions were in direct competition with his medical group for health care business in the Highland Park community.
 
 
 28
 Carnill contends that Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), governs this appeal. He cites Liljeberg for the proposition that a judge who is a trustee of an adversary institution must recuse herself under Sec. 455.
 
 
 29
 Carnill also contends that Judge Taylor had direct or constructive knowledge of the circumstances that disqualified her under the statute, such that a reasonable observer would have questioned her impartiality. His contention is based on two purported facts.[2] First, the hospitals of which Judge Taylor is a trustee allegedly receive a large portion of their income from Blue Cross/Blue Shield of Michigan, the primary victim of Carnill's bilking scheme. Second, the hospitals with which Judge Taylor is affiliated employ members of the American Medical Association (AMA). In Wilk v. American Medical Association, 671 F.Supp. 1465 (N.D.Ill.1987), aff'd 895 F.2d 352 (7th Cir.), cert. denied sub nom. Wilk v. Joint Committee on Accreditation of Hospitals, 110 S.Ct. 2621 (1990), the district court held that the AMA violated the antitrust laws by engaging in a conspiracy to boycott chiropractors. Carnill asserts that Wilk established the presumption that all AMA members have a bias against chiropractors like himself, and this bias extends to hospital trustees like Judge Taylor. Carnill claims that he could not receive an impartial hearing from a judge operating under such an obvious conflict of interest.
 
 
 30
 We find that Judge Taylor's trustee relationship with certain hospitals could not have had any impact on her ability to remain impartial. There is no indication in the record that she did not fulfill her judicial responsibilities.
 
 
 31
 Hamilton Clinic is not a competitor of the hospitals. The evidence at trial showed that the Hamilton Clinic was operated solely for the purpose of defrauding Blue Cross, not for providing legitimate patient services.
 
 
 32
 Liljeberg is not controlling. In Liljeberg, the judge was the trustee of a university with a direct interest in the litigation over which the judge was presiding. In Carnill's case, none of the hospitals had an interest in the criminal prosecution sufficient to raise an issue as to Judge Taylor's impartiality.
 
 
 33
 As Carnill has not demonstrated that Judge Taylor harbored any "personal bias or prejudice" or held "any other interest that could be substantially affected by the outcome of the proceedings," the district court properly denied the motion for disqualification under Secs. 144 and 455.
 
 
 34
 For the foregoing reasons, the order of the district court denying Carnill's motions is AFFIRMED.
 
 
 
 *
 The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 Judge Taylor presided over Carnill's fraud trial
 
 
 [2]
 Carnill also claims that the appearance of a conflict of interest arose when a juror was treated during the trial at Sinai Hospital. As Carnill cannot show that the juror even knew of Judge Taylor's affiliation with the hospital, let alone that the juror's participation in the trial worked to Carnill's actual disadvantage, this claim is without merit